Randy M. McCALL, Plaintiff,

v.

Kenneth S. APFEL, Commissioner of Social Security, Defendant.

No. Civ.A. 1:98–0217.

United States District Court, S.D. West Virginia.

March 24, 1999.

Deborah K. Garton, Hensley, Muth, Garton & Hayes, Bluefield, WV, for Randy M. McCall, plaintiff.

Rebecca A. Betts, United States Attorney, Charleston, WV, Michael L. Keller, Assistant United States Attorney, Charleston, WV, James Winn, Chief Counsel, Social Security Administration, Office of the General Counsel, Philadelphia, PA, for Kenneth S. Apfel, Commissioner of Social Security, defendant.

## MEMORANDUM OPINION

FEINBERG, United States Magistrate Judge.

This is an action seeking review of the decision of the Commissioner of Social Security terminating Claimant's eligibility for disability insurance benefits (DIB) and supplemental security income (SSI), under Titles II and XVI of the Social Security Act (Act), 42 U.S.C. §§ 401–433, 1381–1383f. This case is presently pending before the court on cross-motions for judgment on the pleadings. Both parties have consented in writing to a decision by the United States Magistrate Judge.

The Plaintiff, Randy M. McCall (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on September 29, 1992 and October 20, 1992, alleging disability as of June 30, 1992, due to mental illness. (Tr. at 98, 138, 157.) The claims were denied initially and upon reconsideration. (Tr. at 118, 134, 144, 148.) On August 20, 1993, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 151.) The hearing was held on April 19, 1994 before the Honorable Stephen L. Willson. (Tr. at 44.) By decision dated October 11, 1994, the ALJ determined that Claimant was entitled to benefits because he met the requirements of § 12.05C, Appendix 1, Subpart P, Regulations No. 4. (Tr. at 236–37.)

On November 21, 1995, the Social Security Administration informed Claimant that his benefits would be discontinued because he had stopped treating his alcoholism. (Tr. at 29.) Claimant's request for reconsideration was denied. (Tr. at

271.) On November 12, 1996, Claimant requested a hearing before an ALJ. (Tr. at 274.) The hearing was held on August 27, 1997 before the Honorable Thomas W. Kennedy. (Tr. at 62.) By decision dated October 7, 1997, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 21.) The ALJ's decision became the final decision of the Commissioner on February 6, 1998, when the Appeals Council denied Claimant's request for review. (Tr. at 5.) On March 11, 1998, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and 42 U.S.C. § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir.1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (1998). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. at §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. at §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. at §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. at §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. at

§§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir.1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868–69 (4th Cir.1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (1998). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir.1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 15, 20.) Under the second inquiry, the ALJ found that Claimant suffers from the severe impairment of the combined impact of seriously limited intellectual functioning and anxiety. (Id.) At the third inquiry, the ALJ concluded that Claimant's impairment does not— without consideration of his alcoholism— meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, 20.) The ALJ then found that Claimant has a residual functional capacity for a limited range of work at the medium exertional level. (Tr. at 18, 20.) As a result, Claimant cannot return to his past relevant work. (Id.) Nevertheless, the ALJ concluded that Claimant could perform landscaping and cleaning jobs which exist in significant numbers in the national economy. (Id.) On this basis, Claimant's benefits were terminated. (Tr. at 19–21.)

*Scope of Review*

The sole issue before this court is whether the final decision of the Commis-

sioner denying the claim is supported by substantial evidence. In *Blalock v. Richardson,* substantial evidence was defined as

"evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

*Blalock v. Richardson,* 483 F.2d 773, 776 (4th Cir.1972) (quoting *Laws v. Celebrezze,* 368 F.2d 640, 642 (4th Cir.1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." *Oppenheim v. Finch,* 495 F.2d 396, 397 (4th Cir.1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

*Claimant's Background*

Claimant was born on November 3, 1959 and was thirty-seven years old at the time of his second administrative hearing. (Tr. at 65.) He completed the ninth grade. (Tr. at 66.) In the past, he worked as a dishwasher. (*Id.*)

*The Medical Record*

Claimant saw Dr. Cristina Lecaros–Trinidad from September 22, 1992 to March 9, 1993. (Tr. at 196–212.) The doctor's treatment notes document complaints of anxiety. (Tr. at 196.) The doctor strongly encouraged Claimant to quit smoking. (Tr. at 202.)

On January 13, 1993, Claimant saw Larry J. Legg, a licensed psychologist. (Tr. at 187.) Claimant's testing revealed a verbal IQ of 67, a performance IQ of 62 and a full scale IQ of 63. (Tr. at 189.) Mr. Legg reported:

In my opinion, Mr. McCall's ability to understand, carry out and remember instructions, as well as respond appropriately to supervision, coworkers and work pressure in a work setting is judged to be moderately impaired. This is primarily due to what appears to be a chronic disturbance of mood as well as his borderline intellectual functioning.

(Tr. at 190.)

Claimant was admitted to Princeton Community Hospital on March 16, 1993. (Tr. at 347.) He reported that he had been drinking heavily for at least the past six months. (*Id.*) During his stay at the hospital, Claimant was detoxed on decreasing levels of Librium. (Tr. at 348.) On discharge, Claimant was encouraged to submit to alcohol rehabilitation but he was "not willing or motivated." (*Id.*)

At the request of his attorney, Claimant was evaluated by Dr. Nasreen Dar on May 11, 1993. (Tr. at 213.) Claimant reported nervousness and alcoholism. (*Id.*) Dr. Dar offered the impression of a generalized anxiety disorder, a dysthmic disorder and alcohol abuse. (Tr. at 214.) The doctor gave the following recommendations:

1. Mr. McCall does not appear able to tolerate much stress or handle any gainful employment. He is not a good candidate for vocational rehabilitation.

2. I would recommend for him to seek psychiatric follow-up treatment.

3. If the funds are granted, he does appear able to handle those by himself.

(*Id.*)

Claimant saw Dr. Riaz Uddin Riaz on September 11, 1993. (Tr. at 217.) Claimant reported nervousness, anxiousness, depression and alcoholism. (Tr. at 217.) Dr. Riaz diagnosed major depression, a generalized anxiety disorder, alcohol dependence and mental retardation. (Tr. at 219.) The doctor concluded:

Patient has emotional problems alone which makes him incapable of gainful employment. He would be unable to interact appropriately with his coworkers and supervisors. He would be unable to perform routine repetitive tasks at a sustained level. He is not a suitable candidate for vocational rehabilitation. He is not capable of managing his own benefits.

(Tr. at 219.)

On September 10, 1993, Claimant saw Mr. Constantine Demopoulos, a licensed psychologist. (Tr. at 222.) Claimant reported hypertension, depression and alcoholism. (*Id.*) Mr. Demopoulos offered a diagnostic impression of alcohol dependence, a generalized anxiety disorder, major depression and mental retardation. (Tr. at 224.) He concluded:

It is felt that this individual is an extremely poor prospect for any type of employment or any type of vocational rehabilitation services. He has a limited ability to learn. I cannot see any way how this individual can function in any type of work, part time or full time. I do consider the prognosis for rehabilitation, treatment or employment as extremely poor. Furthermore, due to his alcoholism and low intellectual functioning he is not considered competent to handle his own funds. If any money is awarded to him he should definitely have a guardian.

(*Id.*)

Claimant was seen at Southern Highlands Community Mental Health Center on March 18, 1996 complaining of anhedonia, inability to relax, and irritability. (Tr. at 322.) Claimant reported that he had been sober for the previous three months. (Tr. at 323.) The doctor diagnosed alcohol dependence, an adjustment disorder, borderline intellectual functioning, a personality disorder and hypertension. (*Id.*)

On May 24, 1996, Claimant underwent a second evaluation by Mr. Demopolous. (Tr. at 325.) Claimant reported that he had not had a drink for six months. (*Id.*) The psychologist diagnosed a generalized anxiety disorder, major depression, mental retardation and alcohol dependence in good remission. (Tr. at 327.) He recommended, "It is felt that this individual is an extremely poor prospect for any type of employment or any type of vocational rehabilitation services. He should definitely continue his treatment at Southern Highlands Community Mental Health Center." (*Id.*)

The same day, Claimant again saw Dr. Riaz. (Tr. at 328.) Upon examination, the doctor concluded:

Patient has a combination of emotional and physical problems which makes [sic] him incapable of gainful employment. He will be unable to interact appropriately with his co-workers and supervisors. He will be unable to perform routine repetitive tasks at a sustained level. He is not a suitable candidate for vocational rehabilitation. He is capable of managing his own benefits.

(Tr. at 329–30.)

*Claimant's Challenges to the Commissioner's Decision*

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the decision is based on an erroneous determination that Claimant's alcoholism is a present impairment which is a contributing factor material to his disability.

*The Statutory Change*

In 1996, Congress amended the Social Security Act to preclude individuals suffering from alcoholism from receiving benefits. Specifically, "[a]n individual shall not be considered to be disabled ... if alcoholism ... would ... be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C). The corresponding regulations state that alcoholism is a contributing factor if the claimant would not be disabled if he stopped using alcohol. 20 C.F.R. §§ 404.1535(b), 416.935(b) (1998).

The amendment applies to all cases which were not "finally adjudicated by the Commissioner" prior to March 29, 1996. Pub.L. 104–121, § 105(a)(5)(A), 110 Stat. 847, 853 (1996). Claimants whose cases were finally adjudicated prior to March 29, 1996 continued receiving benefits until January 1, 1997. *Id.*

The 1996 amendment and the social security regulations set up a two-step analysis. First, the ALJ must determine whether the claimant is disabled. *See* 20 C.F.R. §§ 404.1535(a), 416.935(a) (1998). If the ALJ does conclude that the claimant is disabled, he must then ask whether alcoholism is a contributing factor to claimant's disability. *See id.* Alcoholism is a contributing factor if the claimant would not be disabled if he stopped drinking. *See* 20 C.F.R. § 404.1535(b)(1) (1998).

*The Prior Finding that Claimant Was Disabled*

In this case, Claimant was determined to be disabled prior to the enactment of the 1996 amendment. At Claimant's first administrative hearing, the ALJ questioned Claimant at length with regard to his alcoholism:

Q What were you doing there?

A Dishwasher. Busboy.

Q You'd been fired from a number of these jobs, is that right?

A Yes.

Q And what was the reason?

A Alcohol.

Q Okay. Are you still drinking now?

A Two six-packs.

Q A day?

A Three, four days a week. Every day, three or four days.

Q Do you feel that you can control your drinking?

A No.

. . . . .

Q ... Do you think you[r] anxiety is—and your drinking are probably linked together?

A Yes.

Q If you could lick one, you could lick the other? They'd probably go away together?

A I don't know.

(Tr. at 50, 56.) Following the administrative hearing, the Secretary awarded benefits because

claimant suffers from both a significant anxiety disorder and intertwined chronic alcoholism. These conclusions are supported by several independent psychological evaluations, which have produced diagnosis [sic] of a depressive disorder, markedly severe anxiety disorder and alcohol abuse/dependence, in addition to limited intellectual capacity. Claimant reported having frequent nervous/panic attacks, depression, and loss of energy. He also reported feeling tired, frequent mood swings, difficulty remembering and concentrating, and extreme difficulty tolerating crowds, loud noise or children. Claimant also testified at the hearing that he drinks approximately 2 six packs of beer a day, his wife buys alcohol for him and supports him, and he lost his job as a bus boy as a result of uncontrolled alcohol abuse. These additional impairments produce significant work related limitation of function. Claimant meets the requirements of section 12.05C in the Listing of Impairments, and is under a disability, on medical considerations alone, pursuant to 20 C.F.R. 404.1520(d) and 416.920(d).

(Tr. at 235–36.)

*The Cessation of Benefits*

On December 1, 1995, the social security administration terminated Claimant's benefits for failure to treat his alcoholism. (Tr. at 29.) While Claimant's case was awaiting reconsideration, (Tr. at 271), Congress amended the Social Security Act, eliminating alcoholism as a basis for disability. *See* 42 U.S.C. § 423(d)(2)(C).

At Claimant's second administrative hearing, Elizabeth Gillmore, a Medical Ex-

pert (ME), testified. Prior to testifying, the ME questioned Claimant:

Q Did you, did you drink trying to feel better because of the depression or did you drink just for the fun?

A No, I done it just for the, for the fun of it.

Q Okay. Okay. What are you doing now as far as controlling your drinking? What are you doing to try to control it?

A Well, I, I don't want anything to do with liquor....

.　　　.　　　.　　　.　　　.

Q Okay. How about beer and wine and things like that?

A No.

Q Do you—

A I don't, I don't drink.

Q Okay.

A I mean, January 1 of '98 will be a year for me.

Q Okay. So it was '97, not '96.

A '97, yeah.

Q Okay. Do you go to AA or any meetings like that?

A I go to Southern Highlands.

Q Okay. So that's, that's to help you with the alcohol?

A Right.

Q That's one of the big things you guys talk about is how to keep from drinking.

A Yes, right.

Q Okay. And how often do you go there?

A I go once a month. See my counselor, David Binnely.

Q Okay. Since you've stopped drinking, has the depression and anxiety gotten any better?

A No, it has not.

Q Okay. All right. You said you had some side effects from the medication? Which medication gives you the side effects?

A The Respinol.

(Tr. at 84–86.) Upon taking this testimony, the ME then testified that—assuming Claimant is no longer drinking—he does meet the requirements of § 12.05C of the listing of impairments. (Tr. at 87.) The ME proceeded to note that she had reservations concerning whether Claimant had stopped drinking:

A I guess it's just hard to know how he's not drinking at this point. You know, he's not going to AA. You know, he is seeing you know, (INAUDIBLE) of help for it. But there aren't the usual specific things that are usually done aren't really outlined in here. So, I mean, it's just difficult. The records don't kind of completely support his testimony. And a consultative exam might help with that, but it's, you know, it may not be a necessary thing. It's—there is enough there that would indicate that he is getting help and that there's a good chance he's not drinking. I just can't say for sure that he's not doing that because I don't have the evidence here other than what I'm extrapolating from the medications he's taking and the results he's getting. But, I mean, he's on medications that should be helping him sleep, that should be giving him a good night's sleep. It should be having some of those—it should be taking care of some of that problem. And so there is some, you know there's a little bit of doubt, although if the anxiety disorder was bad enough, the medications might not be enough on their own. But if he's drinking, that could be interfering with the medication enough to make them not work. That's what isn't real clear here that I can see, you know, completely clear in, in this case. And that's just what's a little bit confusing.

(Tr. at 88.) Based in part on the ME's testimony and in part on other factors, the ALJ concluded that Claimant's alcoholism is not in remission. (Tr. at 15–17.) As a result, the ALJ found Claimant's alcoholism to be a contributing factor to his dis-

ability. (*Id.*) Thus, Claimant's benefits were terminated. (Tr. at 21.)

*The Issue: Is Claimant Still Drinking?*

The ME testified that Claimant meets § 12.05C of the listing of impairments if Claimant is no longer drinking. (Tr. at 87.) The ALJ accepted the testimony and his acceptance is supported by the substantial weight of the evidence. (Tr. at 16.) Thus, the only question which remained for the ALJ was whether Claimant was still drinking. (*Id.*) As a result, the only question before this court is whether the ALJ's determination that Claimant continues to drink is supported by substantial evidence.

Determining whether or not an alcoholic is still drinking has always been difficult. It is well established that a facet of alcoholism is denial. *See Adams v. Weinberger*, 548 F.2d 239, 245 (8th Cir.1977) (noting that an alcoholic's denials are frequently "the rationalizations of a sick individual who does not realize the extent of his illness"). The unfortunate reality is that an alcoholic is adverse to admitting his drinking even when an admission would be in his best interest. *See Swaim v. Califano*, 599 F.2d 1309, 1312 (4th Cir. 1979) ("[T]he testimony of a true alcoholic, standing alone, cannot be relied upon as substantial evidence that the alcoholic can control his drinking problem."). Prior to the demise of alcoholism as an eligible impairment for benefits, courts refused to accept the testimony of alcoholics that they were no longer drinking because such testimony was inherently unreliable. *See Lubinski v. Sullivan*, 952 F.2d 214, 219–220 (8th Cir.1991) (finding ALJ's decision that claimant was not disabled unsupported by substantial evidence because ALJ accepted claimant's unreliable testimony that he was able to control his drinking). With the change in the law, an alcoholic is even less likely to admit he imbibes.

To make matters worse for the ALJ, the law provides little guidance as to how to analyze an alcoholic's credibility. The customary credibility analysis was constructed to evaluate the truthfulness of a claimant's statement that she does suffer from an impairment—usually pain. · When the relevant statement is that of an alcoholic claiming he has stopped drinking, the analysis is turned on its head. Where the ALJ would ordinarily be evaluating an assertion that an impairment exists, he must now evaluate a denial that an impairment exists. The distinction is consequential because the second scenario injects the difficult notion of negative proof. Affirmative proof requires the proponent to show the existence of one thing. Negative proof, on the other hand, requires the proponent to show the absence of any other possibility. Manifestly, the latter is a far more difficult showing.

The instant case presents an example of negative proof. There are two possibilities: Claimant is drinking or he is not. There is no affirmative evidence that Claimant has had a drink since January 1, 1997. Therefore, Claimant argues, Claimant has not had a drink since that date. (Pl.'s Br. at 9, 13–14.) The problem with this logic is that it relies on an absence of evidence as support for the proposition that one of the two possibilities exists.

> To argue that lack of evidence supports either position is to commit the fallacy of argumentum ad ignorantiam, that is, an argument from ignorance. This fallacy occurs whenever one argues that the absence of evidence in support of a thesis establishes that the thesis is false, or conversely, that the absence of evidence in opposition to the thesis establishes that the thesis is true. In most cases, · this assumption is flawed. For example, one could not argue validly that ghosts do not exist because no one has ever proven they do exist. Nor could one validly conclude that ghosts do exist simply because no one has ever been able to prove they do not exist.

Andrew Jay McClurg, *The Rhetoric of Gun Control*, 42 Am.U.L.Rev. 53, 107 (1992).

 It is clear that the evidence conclusively shows neither that Claimant has continued to drink nor that he has stopped. Nevertheless, the ALJ has the unenviable task of choosing between the alternatives. In such a situation, the only way to make a reasoned choice is to compare the circumstantial evidence to one's understanding of existing norms. In concrete terms, if a person like Claimant under ordinary circumstances is most likely one who stills drinks, it is reasonable to conclude that Claimant does as well. Clearly, such a method of analysis is not foolproof. Nevertheless, if juries are permitted to make decisions on such grounds, *See Ford Motor Co. v. McDavid,* 259 F.2d 261, 266 (4th Cir.1958) ("[I]t is the province of the jury to resolve conflicting inferences from circumstantial evidence."), surely ALJs must be afforded the same respect. In evaluating whether or not the ALJ's ultimate conclusion is supported by substantial evidence, this court can do no more than require that the ALJ carefully consider the evidence, make reasonable and supportable choices and explain his conclusions. In this case, the ALJ has done so.

*Substantial Evidence that Claimant Continues to Drink*

 There is substantial support in the evidence for the ALJ's conclusion that Claimant continues to drink.

1. *Claimant Previously Admitted that His Drinking and His Anxiety disorder Were Interrelated*

At his first administrative hearing, Claimant acknowledged the interrelationship between his anxiety and his drinking:

Q Do you think you[r] anxiety is—and your drinking are probably linked together?

A Yes.

Q If you could lick one, you could lick the other? They'd probably go away together?

A I don't know.

(Tr. at 56.)

2. *Claimant Asserts that He Stopped Drinking Unaided by Customary Techniques*

Claimant, who previously testified that he was unable to control his drinking, (Tr. at 50), now asserts that he is able to abstain assisted only by monthly visits to his counselor at Southern Highlands. (Tr. at 85.) The ME testified that this regime is substantially different from the customary technique prescribed by Alcoholics Anonymous (AA):

ATTY: Is the program that he is in here at Southern Highland, is it not sort of the equivalent of AA?

ME: No. It's not the equivalent at all. There are some—I mean if they're dealing with the alcohol as they seem to be, that's an issue that they're dealing with, but that would only be kind of the tip of the iceberg to really control an alcoholism which—we don't even know if we're dealing with alcoholism or just simply abuse because that's never been identified either. My feeling is—especially with this family history that we're probably dealing with alcoholism. And that usually takes a whole lot of—especially for someone who's mentally challenged—takes a whole lot of support to get over. And, you know, that's just what I'm not seeing.

(Tr. at 89–90.) *See also Griffis v. Weinberger,* 509 F.2d 837, 838 n. 1 (9th Cir. 1975) ("Some alcoholics can stop; more cannot.").

4. *Claimant's Medication is Ineffective*

In his decision, the ALJ noted:

As Dr. Gillmore observed, therapeutic value of antianxiety medication is negated when mixed with alcohol; and although he has experiences [sic] improvement when he stops drinking, his current complaints track those he reported upon hospitalization for alcohol detoxification. The entire weight of the

evidence is consistent with and strongly probative of a pattern of recurrent alcohol abuse which exacerbates anxiety by negating the pharmacological response of antidepressant medications. (Tr. at 16–17.)

5. *Substance and Demeanor of Claimant's Testimony Substantiated Lack of Truthfulness*

The ALJ's decision with regard to Claimant's credibility on the issue of his drinking was based in part on inconsistencies, evasiveness, lack of candor, and contradictions in Claimant's testimony. The ALJ opined:

> Quantifying the severity of chronic anxiety and its sequelae is problematical; but lack of candor, evasive responses, and explanations of inconsistent evidence together with subjective impressions from treating medical sources, and frequency of follow-up medical care are instructive. Dr. Gillmore testified that claimant has assured clinicians that he has ceased drinking on any number of occasions. However, claimant's hearing testimony contradicted his prior statements, and neither claimant nor legal counsel attempted to offer any explanation when the discrepancy was noted by the expert witness. Claimant's explanation of why he drinks and what events led to termination of employment on several occasions were evasive and troubling. Tired of "doing the same old job," failing to wear protective gear, and ceasing to look for work hardly qualify as disabling conditions. Likewise, drinking "for fun" coupled with inability to specify definitively when alcohol abuse ceased (or undergoing repeated periods of sobriety) suggest claimant's assurances of abstinence were more wishful than realized.

(Tr. at 16.)

Claimant argues that the inconsistencies referred to by the ALJ were minor and can be explained by intermittent periods of sobriety and inadvertent errors concerning specific dates. (Pl.'s Reply Br. at 2–3.) The table below is a chronology of Claimant's battle with sobriety as told by Claimant.

| Date | 9/22/92 | 1/8/93 | 3/20/93 | 5/11/93 | 9/11/93 | 9/22/93 |
| --- | --- | --- | --- | --- | --- | --- |
| Page No. | Tr. at 198. | Tr. at 187. | Tr. at 347. | Tr. at 213. | Tr. at 217. | Tr. at 222. |
| Claimant's report of status of alcoholism | denies drinking | denies drinking | drinking heavily for past 6 months | drinks 6–12 beers 3 times a week | problems with drinking | drinks 12 beers a day |

| 4/19/94 | 3/18/96 | 5/28/96 | 5/30/96 | 9/22/96 | 10/21/96 | 8/27/97 |
| --- | --- | --- | --- | --- | --- | --- |
| Tr. at 50. | Tr. at 322. | Tr. at 328. | Tr. at 325. | Tr. at 319. | Tr. at 331. | Tr. at 85. |
| drinks 6 | sober for 3 months | sober for 6 months | sober for 6–8 months | still sober | does not drink | stopped drinking 1/1/97 |

Explainable or not, it is at least clear that there are inconsistencies in Claimant's report of his alcoholism. It is difficult to conclude from Claimant's history that he has never falsely denied his alcoholism.

Claimant contends that documentation of Claimant's past admitted alcoholism is irrelevant to the present inquiry. (Pl.'s Reply Br. at 3.) While this court does agree that such evidence is not dispositive of the question whether Claimant is currently drinking, these records do have relevance. The ALJ, as trier of fact, must evaluate Claimant's credibility with regard

to his statements that his alcoholism is in remission. The fact that Claimant has probably been untruthful on this specific issue in the past is relevant to whether he is being truthful now.

Claimant has zealously offered explanations for several of the pieces of circumstantial evidence supporting the ALJ's conclusion that Claimant's alcoholism is not in remission. These explanations serve to highlight the difficulties a trier of fact faces when dealing with circumstantial evidence. Nevertheless, the more the circumstantial evidence accumulates, the less plausible the alternative explanations become. In light of the foregoing, the court cannot conclude that the ALJ's decision lacked support.

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the Plaintiff's Motion for Judgment on the Pleadings is DENIED, Defendant's Motion for Summary Judgment is GRANTED, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this Court.

### JUDGMENT ORDER

In accordance with the MEMORANDUM OPINION entered this day, is hereby ORDERED as follows:

(1) Plaintiff's Motion for Judgment on the Pleadings is DENIED; and

(2) Defendant's Motion for Judgment on the Pleadings is GRANTED; and

(3) The final decision of the Commissioner is AFFIRMED; and

(4) This action is DISMISSED from the docket of this Court.

The Clerk is directed to provide copies of this Order to all counsel of record.